Yeates
2 Y    352
30 SC  367

RESPUBLICA *against* WILLIAM COBBET.

On a recognizance for good behavior sued against an alien, he is not entitled to remove the case for trial into the Circuit Court of the United States for the district.

A SUMMONS in debt issued to last December term, grounded on a recognizance of 2000 dollars, entered into before McKean, C. J. by the defendant, on the 18th August 1797, conditioned for his good behaviour.

The defendant at the time of entering his appearance, filed a petition, stating that he was an alien, a subject of the king of Great Britain; that the matter in dispute exceeded the sum of 500 dollars exclusive of costs, and praying the removal of the cause for trial into the next Circuit Court of the United States, to be held for the district of Pennsylvania. His affidavit of the truth of the facts, was subjoined to his petition.

Messrs. Lewis, E. Tilghman, Rawle and Harper, for the defendant, contended for his right of removal.

The constitution of the United States has provided, that " the judicial power shall' extend to all cases, between a state, or the citizens thereof and foreign states, citizens or subjects." Art. 3, § 2. 1 U. S. Laws 12.

The judiciary law, passed 24th September 1789, § 11, enacts, that "the Circuit Courts shall have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature at common law or in equity, where the matter in dispute exceeds, exclusive of costs, the sum or value of 500 dollars, and the United States are plaintiffs or petitioners, or an alien is a party," &c., U. S. Laws, 98. The 12th §, runs thus :—" If a suit be commenced in any state or against an alien, or by a citizen of the state in which the suit is brought against a citizen of another state, and the matter in dispute exceeds the aforesaid sum or value of 500 dollars, exclusive of costs to be made to appear to the satisfaction of the court, the defendant may file a petition for the removal of the cause for trial into the next Circuit Court, &c.

The phraseology of the two sections is different. The 11th section is confined to suits of a civil nature ; the 12th section has no such restrictive words, but omits the terms " of a civil nature," using only " suit," which is *genus generalissimum.* The latter section therefore, being more large and comprehensive that the former, embraces the present case, whether the action be considered of a civil or criminal nature, it being commenced against an alien. The same section also enlarges the power of the Circuit Courts, in cases where the parties are citizens of the same state, and the title of land be concerned, where it is derived under a grant from a state, other than that in which the suit is pending ; for such a suit could not originate in the Circuit Court.

But it is insisted, that this suit can only be viewed as of a civil nature. It is a demand of a numerical sum of money. The recognizance is not before the court on oyer, and they cannot judicially know, that the same was for good behaviour. The declaration does not state for what the recognizance was taken. The defendant may have been bailed for another person. A recognizance is an obligation of record. 2 Bla. Com. 341. It may be given to an individual, as a recognizance of bail to the plaintiff in a civil action. A *qui tam* action and debt for a penalty, partake more of a criminal nature than the present suit, and yet they are held to be civil actions. Cowp. 382. The defendant has not been convicted of any offence. If he had pleaded to the present action, and a demurrer had been filed thereto, he would have been entitled to a writ of error of common right, on the judgment of his court being pronounced against him. If this recognizance had been taken to enforce an appearance to answer an indictment, the action might have been deemed of a criminal nature,

but the case is otherwise ; and it is well known, that a recognizance for the good behaviour has been enacted for matters not indictable, but mere improprieties.

It may be objected, that incidents generally follow the principal, and this particularly holds in cases of prize or no prize. But it will not be denied, that the legislature may separate them, as in the instances of ambassadors, and the privileges of members of congress.

It may be also objected, that the members of the court who take recognizances, have it in their power to examine into all equitable circumstances, and can best modify a recovery. But it does not follow from hence, that recognizances are exclusively sued in the courts where taken. By our laws, recognizances, taken in the Quarter Sessions are to be estreated into the Common Pleas, and those in the Courts of Oyer and Terminer into the Supreme Court. By the 34th section of the Judiciary Law, the laws of the several states are to be regarded as rules of decision in trials at common law, in the Courts of the United States, in a case where they apply. In debt on a recognizance in the Common Pleas, brought in the King's Bench, the same sauce shall be given to the party as if he had been in the Common Pleas. 6 Mod. 132. 7 Term Rep. 357. Where the jurisdiction of a court depends on the quantum of the sum demanded, the same must be determined on the face of the declaration. 3 Burr. 1592. Barnes. 497 S. P. 2 Dall. 358. Holscap v. Deal, in assault and battery in the Circuit Court of the United States.

Although a suit brought by a state against the citizen of another state, cannot be removed by the latter into the Circuit Court of the United States, under this 12th section of the Judiciary Law, yet there is good reason for an alien having that privilege. Citizens of other states are bound by the general laws of the union, and partake of the different immunities of each state, though they may not elect or be elected. This doctrine was recognized in Camp v. Lockwood, Dall. 393, and is fortified by the 2d and 4th articles of the constitution of the United States. This constitution sedulously guards and protects the interests of aliens. The federal courts and not those of the individual states, are their great safeguards. The dignity of each state was less consulted than the safety of foreigners nconnected with the governments,—possessing no influence in the community. It is but too true, that they have experienced heretofore many inconveniences from these causes ; but they have daily lessened. But in what instance could there be a greater possible danger to an alien, than in the case of a

state commencing a suit against him in her own courts ? His true security consists in defensive and not offensive operations, in a court of justice.

If a state may originate a suit in the Supreme Court of the United States against an alien, he also should have a like power of removing an action commenced in the courts of such state into the Circuit Court of the district. This would put both parties on the same footing. The words of the 3d article of the constitution of the United States, that "in all cases in which a state shall be a party, the Supreme Court shall have original jurisdiction," do not imply exclusive jurisdiction, but concurrent. It may have an appellate jurisdiction, in cases not designated by the constitution. If the powers delegated to the union by that instrument, are not to be enlarged by the construction or implication, neither are they to be thus abridged.

Arguments from inconvenience can only be applied where the words of a statute are doubtful or ambiguous. 3 Burr. 1416. Vaugh. 37, 38. If the defendant's case is brought within the words of the law, the natural meaning thereof must be conclusive on the court. Inconveniences may result from our construction of the act, but they may also follow the doctrine to which we are opposed. The number of aliens is but few, compared with the rest of the community, and the evils arising from the removal of their causes into the Circuit Courts, when sued by states, cannot subsist to a great extent.

The late adopted amendment of the constitution of the United States, respecting the insuability of " any one of the United States by citizens of another state, or by citizens or subjects of any foreign state," will probably be much relied on, by our adversaries. But it will be remembered, that it extends only to " suits in law or equity, commenced or prosecuted against any one of the United States." Here the commonwealth is a plaintiff, not a defendant.

It is freely admitted, that every state court in the union must necessarily be called in some instances, to judge of the constitutionality of the laws of the union. It is presumed, that some observation will be hereafter made in the course of this argument, on the act in question. But it is submitted to the court, whether the words " of a civil nature," inserted in the 11th section, are not wholly unwarranted by the terms of the constitution; and whether the words of the 12th section, are not strictly warranted thereby—the expressions " if a suit be commenced," clearly meaning " constitutionally brought."

Messrs. Ingersoll and Dallas for the commonwealth. This is a question of the greatest magnitude to the government; it is no less, than whether the administration of criminal justice in every state in

all bailable cases, shall be dependant on the courts of the United States, where aliens are parties.

It may be considered under three general heads. 1st, Whether in any case against an alien, a state can be compelled to prosecute it in the United States' courts. 2. Whether the defendant's case be of that species. 3. Whether if any doubts existed formerly herein, they are not fully removed by the late amendment, or rather declaratory law of the United States.

1. The powers of congress are derived solely from the constitution, which is the act of the people. The United States can only legally exercise the powers delegated to them, and cannot assume others by implication or inference. There is no expression in the constitution which gives any special privilege to aliens beyond those given to citizens of other states, nor did good policy require it. By the 2d. section of the 3d. article, in all cases affecting ambassadors, other public ministers and consuls, and those in which a state shall be a party, the Supreme Court shall have original jurisdiction; in all the other cases before mentioned, the Supreme Court shall have appellate jurisdiction both as to law and fact," &c. No jurisdiction is given to any inferior court, in the case of a state, nor did the Circuit Courts then exist, and consequently could not have been within the contemplation of the framers of the constitution. On what ground then can the jurisdiction of the circuit courts, as to states, rest? Certainly not on the instrument of union. But can it even be inferred from the judiciary bill? The 11th section does not extend to the cases of aliens, where the sum demanded is less than 500 dollars. The suits must also be of a civil nature, and therefore torts are excluded, which are of a criminal nature. Neither will it apply to the case of alien plaintiff and alien defendant, for though the words are—" or an alien is a party," if the words should be taken in that extensive sense, the provision would not be warranted by the constitution.

The 12th section is in *pari materia* with the preceding one. It specifies the same parties, pursues the same sum of 500 dollars, and therefore it also excludes torts on a fair construction. This section became necessary to effectuate the intention of the former; it gave the alien a power, when sued in a civil suit in a state court by an individual citizen, to remove the cause into the Circuit Court. If a public minister had commenced an action against a foreigner in a state court, the latter could not have removed it, because no provision is made for it, and yet that suit would be within the same reason as the present application.

In no one part of the 11th or 12th sections, are states mentioned as parties. But in both aliens are thus spoken of, as well

as citizens of other states. Why so? Because the words relate to suits purely civil and of a mere private nature. In the 11th section, the concurrent jurisdiction of the Circuit and State Courts is expressly mentioned. The 13th section enumerates states as parties, and is thus expressed; "The Supreme Court shall have exclusive jurisdiction of all controversies of a civil nature where a state is a party, except between a state and citizens of other states, or aliens, in which latter case it shall have original but not exclusive jurisdiction." As to the cotemporaneous opinions entertained of the constitution of the United States in the different states, it is said in 2 Federalist, 317, 318, in cases in which a state is a party, it would ill suit its dignity to be turned over to an inferior jurisdiction; states may pay their debts in their own way. And again, 323 to 327, State Courts retain their jurisdiction, unless expressly taken away. An appeal will lie from the State Courts to the Supreme Court of the United States, but not to any of the subordinate federal courts, unless, &c.

A diversity of opinion has been entertained by the judges of the Supreme Court of the United States, respecting the meaning of the word "original," as applied to the jurisdiction of that court in the 2d section of the 3d article of the instrument of union, whether it shall be construed exclusive or concurrent. In Chisholm v. the State of Georgia, Judge Iredell held, that the Circuit Court can exercise no jurisdiction where a citizen and a state are parties; nor in the case of an alien. 2 Dall. 436. In the United States v. Ravara, Judge Wilson differed from Iredell, and thought that "original" did not imply exclusive jurisdiction, *Ib.* 298; and in Spalding v. Brailsford, 11th August 1792, on a motion for an injunction, it was held that an inferior Federal Court cannot compel a state to become a party, but that she might become such by her own consent. The state of Georgia applied to be admitted in the Circuit Court to recover a debt. Judge Iredell asserted, that wherever a state was a party, the Supreme Court had the sole exclusive jurisdiction, and that Georgia could not appear in the Circuit Court. The other judges did not contradict the doctrine, and an injunction was granted. *Ib.* 409. And on a bill to dissolve this injunction, Judge Iredell again declares, that Georgia could only interplead in the Supreme Court, and not in the Circuit Court. The rest of the court did not disagree herefrom, though several terms had elapsed; but the cause was continued. *Ib.* 415.

2. The demandant's counsel had strenuously contended that the present case is a suit of a civil nature. A recognizance to appear at the assizes, to keep the peace, to pay a debt or the

like, are severally enumerated together in the case cited from 2 Bla. Com. 341. As well might they have relied on 4 Bla. Com. 301, that a bill of indictment is the suit of the king.

It has been moreover declared, that the court is not judicially possessed of the knowledge of the purpose for which the recognizance was taken, because forsooth, the defendant has not thought proper to crave oyer? In other words, the Chief Justice who issued the warrant whereon the recognizance was exacted, and the whole court, " to whose satisfaction it is to be made appear what is the matter in dispute and its sum or value," are to be precluded from examining the record, which is the ground of action! No answers are necessary to such remarks.

The power of preserving the state government is essential to their security; and in this light must be viewed the capacity of enforcing the attendance of accuser and accused at the proper tribunals.

This is an action of a criminal nature, necessary for the punishment of an alleged offence; the substantial issue is, guilty or not guilty?

Suppose this government should think proper to alter the publishment of all offences to pecuniary mulcts, or that a penalty under the health laws should be sued for by the state, could such actions, brought against foreigners, be transferred by them into the Circuit Court? Put the case of an alien witness, bound over on an alleged murder, and forfeiting his recognizance, or that even being brought in on an attachment for a contempt in not appearing, he is set free on entering into a new recognizance. Shall he delay for years the justice of the country, by a transfer of the suit brought against him, to another tribunal? Put the case of an alien entering into a recognizance to answer interrogatories, shall it depend on other courts whether justice shall be eluded? A citizen or alien may be indicted for a base conspiracy; the former may be convicted in the State Court, while the latter may be acquitted in the Circuit Court, and thus different judgments follow, under this new doctrine.

The federal courts have nothing to do with the custody of an offender. A recognizance is no more than a substitution for his person. If the case of the persons sued on forfeited recognizances was merely consulted, it is evident, that the state courts could give more efficacious relief, and go more fully into the examination of equitable circumstances, than could possibly be done by the federal courts, unacquainted with the parties, remote from the scenes of action, and sitting but twice a year for an extensive district.

These considerations strongly fortify the rule, that the cognizance

of the principal, involves the power over the accessary; and whenever the original authority over matters of a criminal nature exists, it draws after it all incidents and consequences, in the same manner that the question of prize or no prize in the court of admiralty, affects all its consequences.

Under the construction of the law contended for by the defendant, we have no doubt in pronouncing, that the constitution of the United States, would never have been adopted by the several states in the union; and that if the present action should be removed to the Circuit Court of the district, the jurisdiction over it would not there be received.

3. If ingenuity could ever have suggested doubts on this subject, they must vanish by the last declaratory act, agreed to in the house of representatives, on the 4th of March, 1794. It is thus expressed: "The judicial power of the United States, shall not be construed to extend to any suit in law or equity, commenced or prosecuted against any one of the United States, by citizens of another state, or by citizens or subjects of any foreign state." In the opinion of a great majority of the states, the instrument of union was never intended to compel any one state to go into the courts of the United States. Their voluntary election as to the federal courts, is preserved to themselves. No compulsory jurisdiction will be exercised over them; in fact it never could have been enforced against them. The provisions of the judiciary law, as they respect states, were grounded on the principle of the *suability* of states, in the Supreme Court of the United States, which under this amendment, (if it may be so called,) no longer subsists. The defendant could not commence an action against the commonwealth, in any court of the United States; neither can he carry one thither commenced by the state against him. But by pursuing the doctrine contended for by the defendant, throughout all its consequences, it will appear, that he might compulsorily make the state a defendant, in a court of inferior jurisdiction; for upon a removal of the cause into the Circuit Court, the conusor may plead payment, and defaulk any contract or bargain made with the state; and a jury upon trial, may find a sum due to him, for which a remedy in ordinary cases, may be had by *scire facias*, against the original plaintiff. The mode in which this remedy should be applied, or the payment of the costs in such case be enforced, we submit to the wisdom of our learned antagonists.

M'Kean, C. J. This action is brought on a recognizance to the commonwealth of Pennsylvania, for good behaviour, entered into before me, by the defendant. The defendant has appeared to the ac-

tion, and exhibited his petition to the court, praying that the jurisdiction thereof, be transferred to the Circuit Court of the United States, as he is an alien and a subject of the king of Great Britain. His claim to this change of jurisdiction, is said to be founded on the 12th section of the judiciary act of Congress, passed 24th September, 1789.

Previous to the delivery of my opinion in a cause of such importance, as to the consequences of the decision, I will make a few preliminary observations, on the constitution and laws of the United States.

Our system of government seems to me, to differ in form and spirit, from all other governments that have heretofore existed in the world. It is as to some particulars national, in others federal, and in all the residue territorial, or in districts, called states.

The divisions of power between the national, federal and state governments, (all derived from the same source, the authority of the people,) must be collected from the constitution of the United States. Before it was adopted, the several states had absolute and unlimited sovereignty within their respective boundaries, all the powers, legislative, executive and judicial, excepting those granted to congress, under the old confederation. They now enjoy them all, except such as are granted to the United States by the present instrument, and the adopted amendments which are for particular purposes only. The government of the United States, forms a part of the government of each state. Its jurisdiction extends to the providing for the common defense against exterior violence, the regulation of commerce, and other matters specifically enumerated in the constitution. All other powers remain in the individual states, comprehending their interior and other concerns.

Should there be any defect in this mode of government, or any collision occur, it cannot be remedied by the sole act of congress, or of the state. The people must be resorted to for enlargement or modification. If a state should differ from the United States, about the construction of them, there is no common umpire, but the people, who are to adjust the affair by making amendments in the constitutional way, or suffer from the defect. In such a case, the constitution of the United States is federal; it is a league or treaty made by the individual states as one party, and all the states as another party. When two nations differ about the meaning of any clause, sentence or word in a treaty, neither has an exclusive right to decide it. They endeavor to adjust the matter by negotiations; but if it cannot be thus accomplished, each has a right to retain its own interpre-

tation, the mediation of other nations, an arbitration, or the state of war.

There is no provision in the constitution, that in such case the judgment of the Supreme Court shall control and be conclusive; neither can the congress by a law, confer that power. There appears to be a defeat in this matter; it is a *casus omissus*, which ought in some way to be remedied. Perhaps the vice president and senate of the United States, or commissioners appointed by each state, (say one,) would be more proper tribunal, than the Supreme Court. Be that as it may, I rather think the remedy must be found in an amendment of the constitution.

I shall now consider the case before us. It is an action brought in the name of the commonwealth of Pennsylvania, against an alien, a British subject. By the express words of the second sentence of the second section of the third article of the constitution of the United States, in such an action, the Supreme Court shall have original jurisdiction, whereas it is now prayed by the defendant, that original jurisdiction be given to the Circuit Court. From this, it would reasonably be concluded, that congress in the 12th section of the judicial law, did not comtemplate an action wherein a state was plaintiff, though an alien was defendant. For it is there said, that "if a suit be commenced in any state "court against an alien," &c. as it does not mention by a siate, the presumption and construction must be, that it meant, by a citizen. This will appear pretty plain from a perusal of the 11th section of the act, where it is enacted, that the Circuit Courts shall have original cognizance concurrent with the courts of the several states, of all suits of a civil nature, of a certain value, where the United States are plaintiffs, or where an alien is a party, &c. This confines the original cognizance of the Circuit Courts, concurrent with the courts of the several states, to civil actions commenced by the United States, or by citizens against aliens, or where an alien is a party, &c. and does not extend to actions brought against aliens by a state; for of such suits, the Supreme Court had by the constitution, original jurisdiction. I would further remark, that the jurisdiction of the Circuit Courts is confined to actions of a civil nature against aliens, and does not extend to those of a criminal nature. For though the word "suit" is used generally in the 12th section, without expressing the words "of a civil nature," yet the slightest consideration of what follows, manifestly shows, that no other suit was meant. The matter in dispute, must exceed 500 dollars in value; special bail must be given, &c. Terms applied to actions of a civil nature only.

Let us now consider, whether the suit against William Cobbet

is of a civil, or of a criminal nature. It is grounded on a recognizance for the good behavior, entered into before the Chief Justice of this state. This recognizance, it must be ceded, was taken to prevent criminal actions by the defendant, his violation of the peace, order and dignity of society, to prevent crimes or public wrongs and misdemeanors, and for no other purpose. It is evidently of a criminal nature, and cannot be supported unless he shall be convicted of having committed some crime, which would incur its breach, since its date and before the day on which the process issued against him. Besides, a recognizance is a matter of record; it is in the nature of a judgment, and the process upon it, whether *scire facias* or summons, is for the purpose of carrying it into execution, and is rather judicial than original. It is no further to be reckoned an original suit, than that the defendant has a right to plead to it. It is founded upon the recognizance, and partaking of its nature, must be considered as flowing from it; and when final judgment shall be given, the whole is to be taken as one record.

It has been well observed by the Attorney General, that by the last amendment, or legislative declaration of the meaning of the constitution, respecting the jurisdiction of the courts of the United States over the causes of states, it is strongly implied, that states shall not be drawn in, against their will, directly or indirectly, before them; and that if the prseent application should prevail, this would be the case. When the judicial law passed, the opinion prevailed, that states might be sued; which by this amendment, is now settled otherwise.

The argument *ab inconvenienti* is also applicable to the construction of this section of the act of congress. Can the legislature of the United States be supposed to have intended (granting it was within their constitutional powers) that an alien residing three or four hundred miles from where the Circuit Court is held, who has from his tur_bulent and infamous conduct in his neighborhood, been bound to the good behavior by a magistrate of the state, should after a breach of his recognizance and a prosecution for it commenced, be enabled to remove the prosecution before the court, at such a distance, and held but twice a year, to be tried by a jury, who neither know the persons nor character of the witnesses, and consequently unqualified to try their credit, and to oblige the prosecutor and witnesses to incur such expense of time and money, in order to prove that he had committed an assault or any other offence, which would amount to a violation of it? If so, such a recognizance, though it would operate as a security to the public against a citizen would be of little avail against an alien. It cannot

be conceived, that they intended to put an alien in a more favorable situation than a citizen in such a case, and by difficulties thrown in the way, discourage and weaken, if not defeat, the use of a restraint, found often to be very salutary in preserving the peace and quiet of the people. Many other inconveniences have been mentioned by the counsel, which I shall not repeat. If therefore any other construction can be made, it ought to prevail.

Upon the whole, my opinion is, that where a state has a controversy with an alien about a contract, or other matter of a civil nature, the Supreme Court of the United States has original jurisdiction of it, and the Circuit or District Courts have nothing to do with such a case. The reason seems to be founded in a respect for the dignity of a state, that their action may be brought in the first instance, before the highest tribunal; and also that this tribunal would be most likely to guard against the power and influence of a state over a foreigner. That neither the constitution nor the congress ever contemplated, that any court under the United States, should take cognizance of any thing, savoring of criminality against a state. That the action before the court is of a criminal nature, and for the punishment of a crime against the state. That yielding to the prayer of the petitioner would be highly inconvenient of itself, and injurious in the precedent. And that cognizance of it would not be accepted by the Circuit Court if sent to them; for even consent cannot give jurisdiction. For these reasons and others omitted for the sake of brevity, I conclude that the prayer of William Cobbet cannot be granted.

Shippen, Yeates and Smith, Justices, were clearly of opinion, that the present suit was not within the true meaning of the judiciary act of congress, and that the late amendment to the constitution put it beyond all doubt.

Petition denied <em>unâ voce.</em>